FILED

**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

2009 AUG 14  PM 1: 10

ROLAND E. PRICE, JR.,

        Plaintiff,

MIDDLE DISTRICT OF FLORIDA
TAMPA, FLORIDA

vs.

CASE NO. 8 09CV 1610-T 33

ANGEL PAGAN and
DAVID WATSON,

TBM

        Defendants.

Civil Rights Claim
Equitable Relief Sought

_____/

## COMPLAINT

COMES NOW, Plaintiff, by and through his undersigned counsel and sues the Defendants, and alleges:

### I. JURISDICTION AND VENUE

1.    **In General**: This is a claim for compensatory damages and equitable relief (both declaratory and injunctive) pursuant to 42 U.S.C. §1983, the 1st Amendment and the 4th & 14th Amendments of the United States Constitution  The claims are based upon the seizure under color of law of personal property of Plaintiff without due process, cause, privilege or consent, which seizure (an American Flag owned and flown by Plaintiff on a flag pole in his front yard) also constituted censorship and suppression of pure symbolic political speech.

2.    **Standing:** Plaintiff is a citizen of the United States and the State of Florida who was directly and personally affected by the official, on-duty actions of police officers of the City of St. Petersburg, Florida, on Monday, August 3, 2009, on Plaintiff's residential property in said city. During the course of an investigation of the alleged crime of defacing or disrespecting an American flag, the Defendants confiscated Plaintiff's American flag then being flown on Plaintiff's property, which flag did not constitute contraband,

1

evidence, fruit of a crime or other seizable property, contrary to and in violation of the Constitution of the United States. Plaintiff attacks the property deprivation as an unlawful seizure without probable cause, and he facially attacks the state statutes more fully set forth below (and attached to this Complaint as Exhibit A) as unconstitutional on their face for being vague and overbroad.

3.      **Nature of the federal claim against the individual Defendants:** Plaintiff alleges that the individually named Defendants are sued in their individual capacities as direct constitutional tortfeasors, performing a patently unlawful seizure of Plaintiff's property without his consent, without a search warrant or other legal justification, and in furtherance of stifling Plaintiff's political expression. Said Defendants exceeded their discretionary authority in making an unlawful seizure of Plaintiff's property. Said Defendants not only exceeded their authority but violated clearly expressed and established constitutional guidelines enumerated in a consistent line of Supreme Court and 11th Circuit Court of Appeals decisions invalidating state flag statutes and finding unconstitutional government actions which suppress a citizen's right to symbolic speech by means of defacing, altering, burning or otherwise showing contempt for the American flag.

4.      **Federal question jurisdiction:** Federal jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1343, as to the 1st, 4th, and 14th Amendment claims under the authority of 42 U.S.C § 1983. This is a facial attack on the state flag protection statute, and an "as applied" attack on the officers who violated clearly established law in confiscating Plaintiff's flag and threatening him with arrest. Defendants still have Plaintiff's flag.

5.      There are no pendent state claims.

## II. PARTIES

6.      **Plaintiff Roland E. Price, Jr. ("Price")** was, on the dates on which the

2

police conduct occurred that is involved in this complaint (August 3, 2009), a white male, residing in St. Petersburg, Florida, specifically at 303 27th Avenue N., in Pinellas County. Plaintiff is *sui generis* and suffers from no legal, physical or mental disability.

7.    **Defendant Patrolman ANGEL PAGAN** was, at all relevant times, a sworn, full-time, uniformed St. Petersburg police officer (SPPD) exercising his law enforcement discretion under color of law.

8.    **Defendant Patrolman DAVID WATSON** was, at all times relevant a sworn, full-time, uniformed SPPD patrol officer exercising his law enforcement discretion under color of law in concert with Defendant.

9.    The **City of St. Petersburg** is a political subdivision of the State of Florida, and employs the Defendants as full-time, state certified police officers on its police department. Said City's police powers are empowered to seize persons and property under well-defined circumstances. They are not authorized to make unlawful seizures of either persons or property.

10.    **Venue.** The St. Petersburg Police Department is the official law enforcement agency of the City of St. Petersburg, Florida, located in Pinellas County. All actions that affected Plaintiff's rights occurred within the jurisdiction of that city and within the Middle District of Florida.

## FACTUAL ALLEGATIONS

11.    On August 3, 2009, at approximately 6:00 p.m. (in daylight), the Defendants arrived at Plaintiff's home in marked police cruisers, and saw that there was a United States flag mounted on a flag pole on Plaintiff's front yard. The flag had a large "X" spray painted on its face, along with the words "ANAL FAG." Plaintiff admitted to spray painting his flag as a gesture of political dissent, and asserted that he had every legal right

3

to do so as a matter of free political speech.

12.     At all times relevant, said flag was flown on Plaintiff's private property, and Plaintiff's actions were at all times respectful and cooperative with the police.

13.     Defendants ordered the flag removed, and took it into their possession, saying that they believed that Plaintiff had violated state statutes with regard to the proper display of the flag, and that marking on it constituted a crime. They advised Plaintiff that he faced arrest for the mutilation, desecration or misuse of a United States flag.

14.     In fact, there are several state statutes that define Plaintiff's actions as unlawful (See, attached as Exhibit A, F.S. §§ 256.05, 256.06, 256.09, 256.10, and 876.52. However, statutes virtually identical to these have been declared unconstitutional by the U.S. Supreme Court as vague and overbroad when they are utilized to suppress protected symbolic or expressive speech. Even the Florida Statutes Annotated cite three of these well known Supreme Court cases that strike down similar statutes in Texas, Washington, D.C., State of Washington, and Massachusetts. (Citing U.S. v. Eichman, U.S. Dist. Col., 110 S.Ct. 2404, 496 U.S. 310, 110 L.Ed.2d 287 (1990) (holding flag burning expressive First Amendment free speech); Smith v. Goguen, U.S.Mass.1974, 94 S.Ct. 1242, 415 U.S. 566, 39 L.Ed.2d 605 (Massachusetts flag misuse statute that subjects to criminal liability anyone who publicly treats contemptuously the flag of the United States is void for vagueness under the due process clause); and Spence v. State of Wash., U.S.Wash.1974, 94 S.Ct. 2727, 418 U.S. 405, 41 L.Ed.2d 842 (Washington flag misuse statute was unconstitutional as applied to action of a college student in hanging a privately owned United States flag, upside down, with a peace symbol affixed, out of his window on private property, as a means of expressing his opinion). These rulings are still the law of the land, and any law which is inconsistent or contradictory to them are themselves unlawful.

15.    Although Plaintiff was charged with no crime, Defendants stated that they were referring the matter to the Office of the State Attorney of the Sixth Circuit and if the State wished to prosecute they would come back and arrest him.  At the time of this complaint, Plaintiff is living in fear of such threatened potential arrest for violating the Florida Flag use and display statutes.  And, the possibility of prosecution is not abstract or fanciful, as the Florida legislature has continuously maintained these laws protecting the Florida, American and Confederate flags by statute, and at least the two instant Defendants believe them to be valid and have seized property and threatened prosecution in reliance upon them.  In fact, more than a week after the flag was seized, it has yet to be returned to Plaintiff, reportedly now being in the possession of the State Attorney's Office.

16.    Plaintiff verbalized to the officers that he believed his actions were permitted by the right of free speech to criticize the government, saying "I thought we had free speech in this country."  One officer (Pagan) responded, "*Unfortunately*, that's right."  Plaintiff reiterated for clarification, "Unfortunately?"  The officer again said "that's right."  At some point during this conversation, a visibly angry and hostile Defendant Pagan stated that if Plaintiff did not like living in this country, he should find another.  Plaintiff questioned Officer Watson whether he agreed with Officer Pagan's position, and Watson merely shrugged and said nothing.

17.    Defendant **Officers Pagan or Watson**, or both,  wrote a police report contemporaneous with the events, but the police department would not release any part of it to Plaintiff because the matter was deemed an "active criminal investigation."  Both officers acted in concert and participated in denying Plaintiff's constitutional right to deface his American flag as a visible and symbolic protest of the government.  Officer Watson physically uncoupled the flag from Plaintiff's flag pole and the two officers departed

together with the flag in their possession.

18.     SPPD had no policy explaining, interpreting or applying the flag use statutes. It also has only the binding court decisions of the Supreme Court, 11th Circuit Court of Appeals, and a single district court of appeals decision which are on point condemning the actions taken by Defendants in suppressing Plaintiff's right to free political speech.

19.     Plaintiff has retained the undersigned attorney and agreed to pay him a reasonable fee. Such fee, if Plaintiff prevails, is recoverable from Defendants along with taxable court costs, pursuant to 42 U.S.C. § 1988.

## COUNT I  (Freedom of Speech)
### Section 1983–1st Amendment Claim

20.     Plaintiff adopts by reference all factual allegations contained above. This is a federal civil rights claim flowing from the unlawful seizure of Plaintiff's personal property, in violation of the Plaintiff's First Amendment right to free, unrestricted expression of pure or symbolic political speech in the nature of unspecified criticism of the government of the United States in a lawful manner. Defendants' suppression of that speech was deliberate, hostile, associated with the threat of arrest, and intended to suppress by confiscation and other actions Plaintiff's First Amendment right to show contempt for the government by attacking its flag. The officers expressed open hostility for such constitutionally guaranteed free speech, and sought to deny Plaintiff's participation by seizing his tool of choice–the flag.

21.     Defendants ordered Plaintiff to take down his marked flag and took it into their custody and control, saying they were taking it to the State Attorney for a review of whether Plaintiff was to be arrested and prosecuted. At that moment, Defendants' constitutional violation was complete.

6

22.     Defendants should have known that their actions were contrary to clearly established law protecting political expression through the mutilation, destruction, burning or other "misuse" of the flag of the United States (or even, as further protected by state law, the Florida Flag or even the Confederate Flag).  As early as 1969 the United States Supreme Court held in Street v. New York, 394 U.S. 576 (1969), that words spoken by the defendant, after setting fire to an American flag on a street corner, "We don't need no damn flag," could not constitutionally be punished, and his conviction could not be permitted to stand.

23.     In City of Miami v. Wolfenberger, 265 So.2d 732 (Fla. 3rd DCA 1972), the court addressed the validity of Florida's flag statutes, holding "[a]s was noted in Long Island Vietnam Moratorium Committee v. Cahn, 437 F.2d 344, 348 (2d Cir. 1970), a case on all fours holding New York's equivalent of Section 256.05(2) unconstitutional on its face" for violating the free speech clause.  The 3rd DCA in Wolfenberger, Id. at 732, also cited Cox v. Louisiana, 379 U.S. 536 (1965); Edwards v. South Carolina, 372 U.S. 229 (1963); and Winters v. New York, 333 U.S. 507 (1948) for the proposition that the United States Supreme Court has held on numerous occasions that if there is a reading of a penal statute which authorizes local law enforcement officers to prosecute traditional First Amendment activity, such a statute is unconstitutionally overbroad, despite the fact that the statute may also purport to prohibit activity not entitled to constitutional protection.  However, in the instant case, both Defendants clearly informed Plaintiff that it was his defacing of the U.S. flag that was the reason for its seizure and his possible prosecution.  No other offense was mentioned.  It was all about the flag.

24.     Law enforcement officers are deemed to know the existing state of the law they are executing.  In fact, ordinary citizens are expected to know the law that governs

7

their particular activities: "All citizens are presumptively charged with knowledge of the law .... The entire structure of our democratic government rests on the premise that the individual citizen is capable of informing himself about the particular policies that affect his destiny." Atkins v. Parker, 472 U.S. 115, at 130-3 (1985). Indeed, reliance on a statute "authoriz[ing] official conduct which is patently violative of fundamental constitutional principles" cannot make the defendant's conduct "objectively reasonable." See, e.g., Roska ex rel Roska, v. Peterson, 328 F.3d 1230, 1252 n. 30 (10th Cir. 2003) 328 F.3d at 1252 n. 30. "If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." Harlow v. Fitzgerald, 457 U.S. 800, 818-19 (1982).

25.     The Supreme Court has held that the provision of a state flag misuse statute that subjects to criminal liability anyone who publicly treats contemptuously the flag of the United States is void for vagueness again in Smith v. Goguen, 415 U.S. 566 (1974).

26.     Also in 1974, in Spence v. State of Washington, 418 U.S. 405 (1974), the Supreme Court held that the Washington flag misuse statute was unconstitutional as applied to the action of a college student in hanging a privately owned United States flag upside down, with a peace symbol affixed, out of his window on private property, as a means of expressing his political opinion, where such act was performed at the time of the Cambodian invasion and Kent State incident and the student made no other attempt to attract attention and there was no evidence of risk of breach of peace.

27.     The seminal case of Texas v. Johnson, 491 U.S. 397, 428 (1989), held that a defendant's act of burning an American flag during a protest rally was expressive conduct within the protection of the First Amendment, and that the State could not justify the prosecution of a defendant based on the interest in preventing breaches of the peace or to preserve the flag as a symbol of nationhood and national unity.

28.   A year later, in <u>U.S. v. Eichman</u>, 496 U.S. 310 (1990), the Supreme Court, held that the District of Columbia's Flag Burning Act was subject to the most exacting scrutiny and could not be upheld under the First Amendment, that the appellees' flag burning constituted expressive conduct, reaffirming <u>Texas v. Johnson</u>. (After the Court's decision in <u>Johnson</u>, Congress passed the Flag Protection Act of 1989, replacing the then-existing federal flag-burning statute, which Congress perceived might be unconstitutional in light of <u>Johnson</u>. For the reasons stated in <u>Johnson</u>, 491 U.S., at 413-415, the Supreme Court held the government could not justify its infringement on First Amendment rights.)

29.   It clearly being established as a matter of law that desecrating, defacing or disrespecting the American flag as a protest of the government is protected activity, and any statute, ordinance, rule or other law constraining a private citizen from performing such an act to his own flag on his own property is unconstitutional censorship, the individual Defendants herein are not entitled to qualified immunity. In this federal circuit, rights are "clearly established" by decisions of the Supreme Court, the Eleventh Circuit, or the highest court of the state in which the case arose. <u>Hamilton v. Cannon</u>, 80 F.3d 1525, 1532 n. 7 (11th Cir.1996).

## <u>COUNT II–FOURTH AMENDMENT VIOLATION</u>

30.   Plaintiff adopts by reference all factual allegations contained above. This is a federal civil rights claim flowing from the unlawful seizure of Plaintiff's personal property, in violation of the Plaintiff's Fourth Amendment right to be free from police seizures of personal property where such property is not fruit or evidence of a crime, contraband or otherwise subject to seizure. Plaintiff seeks a declaration by this Court that the Defendants

have conducted an unlawful seizure, and contemporaneously violated Plaintiff's due process rights under the Fourteenth Amendment.

30. Defendants, acting in concert pursuant to the assumption that the flag use statutes were valid, while several decades of Supreme Court jurisprudence existed to inform them that their beliefs and actions were inconsistent with the proscriptions of the First Amendment, rendered any seizure on grounds of the method or content of the speech improper.

31. Defendants deprived Plaintiff of his flag under color of law while in the exercise of their discretionary duty on behalf of the City of St. Petersburg Police Department.

32. The contours of Plaintiff's right to protected political expression by peaceful means on his own private property, utilizing his own U.S. flag, and to be free from the seizure of and interference of said flag by police officers acting under color of law, were clearly established by binding Florida, 11th Circuit, and U.S. Supreme Court precedent long before the seizure on August 3, 2009.

**Wherefore,** Plaintiff demands judgment against the individually named Defendants for violating Plaintiff's federally protected constitutional rights to be free from a deprivation of his First, Fourth and Fourteenth Amendment rights with regard to the possession and display of a U.S. flag that has been modified as a form of political expression of Plaintiff's condemnation of unspecified government practices and conduct, as follows:

a. A declaration that the seizure of his flag was a violation of his right to express political speech under the First Amendment;

b Plaintiff seeks declaratory relief to have §§ 256.05, 256.06, 256.09 256.10,

and § 876.52 declared unconstitutional as vague and overbroad to the extent that they prohibit constitutionally protected expression and conduct, in accordance with clearly established law;

c.     Plaintiff further seeks injunctive relief against Defendants from further interference with his First and Fourth Amendment rights with regard to his exercise of protected political speech, and the return of his personal flag;

d.     Damages (if only nominal) for the value of the flag and the material interference with Plaintiff's constitutional rights;

e.     Plaintiff's reasonable attorney's fees and court costs;

f.     Such other damages and relief as this court may award; and

g.     To the extent the Defendants' actions were an intentional deprivation, or in reckless disregard, of Plaintiff's constitutional rights, punitive damages.

Dated this 13th of August, 2009.

Robert G. Walker, Jr., Esq.
ROBERT G. WALKER, P.A.
Fla. Bar No. 329428
1421 Court Street, Suite F
Clearwater, Florida 33756
Phone: (727) 442-8683
Fax: (727) 441-1895
Trial Counsel for Plaintiff

11